NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| RAYMOND KATCHATAG, | ) | |
| | ) | Supreme Court No. S-19130 |
| Appellant, | ) | |
| | ) | Superior Court No. 1JU-22-00650 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) | AND JUDGMENT* |
| OF CORRECTIONS, COMMISSIONER | ) | |
| JENNIFER WINKELMAN, DEPUTY | ) | No. 2120 – November 26, 2025 |
| DIRECTOR OF INSTITUTIONS | ) | |
| SIDNEY WOOD, SUPERINTENDENT | ) | |
| JAMES MILBURN, LIEUTENANT | ) | |
| RODNEY VON BORSTEL, and | ) | |
| FACILITY STANDARDS OFFICER | ) | |
| HENRY MCCLENAHAN, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Marianna C. Carpeneti, Judge.

Appearances: Raymond Katchatag, pro se, Anchorage, Appellant. Christopher Yandel, Assistant Attorney General, Anchorage, and Treg Taylor, Attorney General, Juneau, for Appellees.

Before: Carney, Chief Justice, and Borghesan, Henderson, Pate, and Oravec, Justices.

---

\* Entered under Alaska Appellate Rule 214.

## I.     INTRODUCTION

An indigent inmate at a correctional facility complained that the Department of Corrections violated his constitutional rights, most specifically his right to access the courts. The inmate sought both injunctive and declaratory relief. The superior court denied the inmate's request for relief and granted summary judgment for the Department. Observing no error in the court's rulings, we affirm.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

While Raymond Katchatag was incarcerated at the Spring Creek Correctional Center (SCCC) in January 2022, he was preparing to file two separate administrative appeals against the Department.[1] Katchatag was indigent and sought an exemption from the appellate filing fees in superior court. In order to establish his indigency and qualify for the exemption, Katchatag was required to provide the court with four certified copies of the balance of his financial account statement from SCCC.[2]

The Department keeps the funds of each incarcerated individual in an Offender Trust Account (OTA). An inmate may obtain a statement of his OTA balance by submitting a request form and paying 15 cents per copy. Under the Department's policy an indigent prisoner can obtain free copies, subject to a determination made by the superintendent.[3] Specifically "[t]he Superintendent or designee shall verify if the prisoner is indigent and authorize legal copies to be made at no cost to the prisoner."[4]

---

[1]     One appeal challenged his administrative segregation, and the other challenged a disciplinary sanction he received.

[2]     AS 09.19.010(b)(2) (providing that prisoner may apply for filing fee exemption by submitting certain financial information, including "a certified copy of the prisoner's account statement from the correctional facility").

[3]     Department of Corrections, Policies and Procedures 808.12: Photocopying for Prisoners § VII(B)(1) (2013).

[4]     *Id.* § VII(A)(4).

In preparing for litigation of his administrative appeals, Katchatag made several requests in January for SCCC staff to provide him with free certified copies of the statement of his OTA balance. SCCC staff denied the requests, explaining in one response that Katchatag was "entitled to one free certified 6-month state[ment] every three months" and "the superintendent or his designee ha[d] to approve any copy charges for indigent inmates." Katchatag sent another request in February, this time to the SCCC superintendent, explaining that he needed the copies in order to file his administrative appeals. This request was also denied, with the superintendent explaining that Katchatag would receive a copy "when [he is] due for one."

When Katchatag filed additional requests in February, they were also denied. He then submitted a Prisoner Grievance form, referencing the previous denials and again requesting free copies of his OTA statement. The grievance was screened and denied, with an explanation that Katchatag had already received a certified copy of his statement on December 15, 2021 and he was not eligible for another free copy until March 15, 2022. Katchatag appealed from the grievance screening to the Deputy Director of Institutions in early April.[5] The deputy director responded less than a week later, directing SCCC to provide Katchatag with the requested copies. SCCC complied, and Katchatag received six copies on April 19. He then used those copies to perfect the filing of his administrative appeals approximately a week later.[6]

## B. Proceedings

In May 2022, about a month after receiving copies of his OTA statements, Katchatag filed the complaint in this case. Katchatag's complaint broadly asserted that SCCC's denials of his requests for OTA statements violated his constitutional rights.

---

[5]    As discussed below, Katchatag disputes whether this communication constituted an "appeal."

[6]    *Katchatag v. State, Dep't of Corr.*, 3AN-22-05853 CI (Alaska Super., Apr. 26, 2022); *Katchatag v. State, Dep't of Corr.*, 3AN-22-05972 CI (Alaska Super., Apr. 26, 2022).

He asked the superior court for an injunction requiring the Department to change its policy to allow all inmates to receive certified copies of their OTA statements at any time, for any purpose, and a declaratory judgment stating that the defendants violated his constitutional rights. He also sought a jury trial.

The Department moved for summary judgment. The superior court granted the motion, concluding that Katchatag's request for injunctive relief was outside its authority. The court also concluded that Katchatag's request for declaratory relief was moot because he had already received copies of his OTA statement and the delay did not prejudice his appeals.

Katchatag appeals.

## III. STANDARD OF REVIEW

"Grants of summary judgment are reviewed de novo, reading the record in the light most favorable to the non-moving party and making all reasonable inferences in its favor as well."[7]

## IV. DISCUSSION

"Alaska Civil Rule 56 provides for judgment to be granted to a party where 'there is no genuine issue as to any material fact' and 'the moving party is entitled to judgment as a matter of law.' "[8] The "party seeking summary judgment has the initial burden of proving . . . that there are no [genuine] disputed issues of material fact."[9] "[A] material fact is one upon which resolution of an issue turns."[10] Once that showing has been made, "the burden shifts to the non-moving party 'to set forth specific facts

---

[7] *Smith v. Anchorage Sch. Dist.*, 240 P.3d 834, 839 (Alaska 2010) (quoting *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1033 (Alaska 2003)).

[8] *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 517 (Alaska 2014) (quoting Alaska R. Civ. P. 56(c)).

[9] *Id.* (alteration in original) (quoting *Mitchell v. Teck Cominco Alaska Inc.*, 193 P.3d 751, 760 n.25 (Alaska 2008)).

[10] *Id.* at 519.

showing that he could produce evidence reasonably tending to dispute or contradict the movant's evidence and thus demonstrate that a material issue of fact exists.' "[11]

As we explain below, Katchatag has not raised any genuine or material disputes of fact. We also hold that the Department is entitled to judgment as a matter of law and that the superior court did not err by denying Katchatag's requests for injunctive and declaratory relief.

**A.  The Superior Court Did Not Err By Determining There Was No Genuine Dispute of Material Fact.**

Katchatag appears to suggest there are two factual disputes that should have precluded the superior court from entering summary judgment. First, he maintains that SCCC's refusal to provide him with copies of his OTA statements prevented him from filing his administrative appeals. Second, Katchatag argues that it was inaccurate for the superior court to characterize his request to the deputy director as an "appeal." Neither argument raises a genuine dispute of material fact.

Related to his first argument, Katchatag states that "S.C.C.C. policy conflicts with the Alaska Rules of Civil Procedure in that after the agency decision [inmates] have 30 days to file to the Superior Court [an] administrative appeal," and that he "attempted to do this and was denied saying that [he] had to wait over 30 days, which by then would have been too late to file the appeal." Katchatag further explains that because of SCCC's refusal to provide him the OTA statements, he was "not able to abide by" the Rules of Civil Procedure, and "was subsequently not able to file the two administrative appeals." To the extent Katchatag is suggesting he was prevented from filing his administrative appeals, he is mistaken.

While it is true that Katchatag's administrative appeals were delayed due to SCCC's initial refusal to provide free copies of his OTA statements, SCCC

---

[11] *Id.* at 517 (quoting *State, Dep't of Highways v. Green*, 586 P.2d 595, 606 n.32 (Alaska 1978)).

eventually provided the copies and both administrative appeals were, in fact, successfully filed.[12] Katchatag first requested copies in January 2022. In a renewed request in early February, Katchatag clearly explained that he needed the copies to file his administrative appeals. But he did not receive the copies until April. However, the merits of his administrative appeals were not prejudiced due to the delay; both appeals were ultimately dismissed on grounds unrelated to the timeliness of their filing.[13]

With respect to his second argument, Katchatag states he "made it clear that there was not any grievance appeal to the D.O.C. Commissioner's Office," but "both the State's attorney and then the Judge wanted to state that there was whereas once the grievance has been screen[]ed and then denied within the facility that is by D.O.C. Commissioner's Office as far as it goes." He further explains that "[w]hile [he] did not file an appeal to the Director of Institutions he did respond back, but according to the D.O.C.'s Commissioner's Office after a screened grievance has been denied that is the final step." Again, Katchatag is mistaken.

The request that Katchatag made to the deputy director is clearly labeled as a "Prisoner Grievance Appeal Statement" and the opening words of Katchatag's statement on that document are "I appeal." Further, the question of whether Katchatag's request to the deputy director is properly characterized as an "appeal" has no material

---

[12] *Katchatag v. State, Dep't of Corr.*, No. 3AN-22-05853 CI (Alaska Super., Apr. 26, 2022); *Katchatag v. State, Dep't of Corr.*, No. 3AN-22-05972 CI (Alaska Super., Apr. 26, 2022).

[13] One appeal was closed for untimeliness, but it was immediately reopened and Katchatag was granted an additional 90 days to file his brief. Order of Dismissal, *Katchatag v. State, Dep't of Corr.*, No. 3AN-22-05853 CI (Alaska Super., Apr. 26, 2022); Order Reopening Case, *Katchatag v. State, Dep't of Corr.*, No. 3AN-22-05853 CI (Alaska Super., Apr. 26, 2022). The other appeal was eventually dismissed for lack of subject matter jurisdiction under AS 33.30.295(a). Order Granting Motion to Dismiss at 3, *Katchatag v. State, Dep't of Corr.*, No. 3AN-22-05972 CI (Alaska Super., Apr. 26, 2022).

bearing on this case. Regardless of how the request is characterized, the deputy director promptly responded to the request and instructed SCCC to provide copies of the OTA statements to Katchatag, and SCCC complied. Thus, Katchatag has failed to demonstrate that there is a genuine dispute of a material fact.

**B.     The Superior Court Did Not Err By Determining That The State Was Entitled To Judgment As A Matter Of Law.**

Having concluded that there is no genuine dispute of a material fact, we now address the question of whether the Department was entitled to judgment as a matter of law.[14] Katchatag requested an injunction requiring the Department to change its policy so as to allow inmates the right to be provided a limitless number of certified OTA statements at any time, for any purpose, and, apparently, free of charge. He also sought a declaratory judgment stating that the defendants violated his state and federal constitutional rights. Adopting the superior court's analysis, we decline to reach the merits of Katchatag's constitutional claims and hold that he is not entitled to either injunctive or declaratory relief.

Katchatag requests "[a] preliminary and permanent injunction that allows any inmate whether they are unsentenced or sentenced to receive via request a certified 6-month statement of account form at any time whether it is for legal or non-legal . . . uses, throughout the entirety of the S.O.A., D.O.C." However, AS 09.19.200 prevents a court from ordering prospective relief in a civil action against a correctional facility unless certain requirements are met.[15] To issue such relief, the court must find, among other things, that the plaintiff has proven a violation of a state or federal right and the

---

[14]     We review this question using our independent judgment. *See Smith v. Anchorage Sch. Dist.*, 240 P.3d 834, 839 (Alaska 2010).

[15]     Alaska Statute 09.19.200 also contains an exception for certain types of consent decrees. AS 09.19.200(e).

plaintiff exhausted all administrative remedies.[16] Another requirement common to both preliminary and permanent injunctive relief is that the prospective relief must be narrowly drawn and extend no further than is necessary to correct the harm[17] or violation of the right.[18]

Even assuming Katchatag proved a violation of his state or federal rights,[19] the superior court was correct to deny injunctive relief because the relief Katchatag seeks is not narrowly drawn, and it clearly extends beyond what is necessary to correct the alleged harm or violation. Here, Katchatag alleges that SCCC harmed him and violated his constitutional rights by failing to provide free copies of his OTA statement in a timely manner. Narrowly drawn relief would address only Katchatag's individual circumstances. In contrast, the relief requested by Katchatag is exceedingly broad, affecting every prisoner in every Department facility. Such relief would constitute a sweeping change that goes far beyond what is necessary to correct the harm[20] or violation of the right[21] alleged by Katchatag.[22]

Katchatag also requested that the court issue a declaratory judgment that the Department violated his rights. But "[c]ourts should decide cases only when a plaintiff has standing to sue and the case is ripe and not moot."[23] "A claim is moot

---

**16** AS 09.19.200(b) (establishing requirement for preliminary injunctive relief); AS 09.19.200(a) (establishing requirement for permanent injunctive relief).

**17** AS 09.19.200(b).

**18** AS 09.19.200(a).

**19** *Id.*

**20** AS 09.19.200(b).

**21** AS 09.19.200(a).

**22** As explained below, more narrowly drawn relief was properly denied as moot.

**23** *State v. ACLU of Alaska*, 204 P.3d 364, 368 (Alaska 2009) (citing *Brause v. State, Dep't of Health & Soc. Servs.*, 21 P.3d 357, 358 (Alaska 2001)).

where a decision on the issue is no longer relevant to resolving the litigation, or where it has lost its character as a 'present, live controversy,' " or "where a party bringing the action would not be entitled to any relief even if he or she prevailed."[24]

Katchatag complains that his rights were violated when SCCC refused to give him free copies of his OTA statement in a timely manner. After Katchatag appealed the denial to the deputy director, SCCC provided the copies. Thus, litigating the matter further would do nothing to resolve this case, because Katchatag has already received the copies of his OTA statement. Thus, the claim is moot.[25]

Katchatag also appears to raise a general challenge to the constitutionality of the Department's policy requiring the superintendent's approval for indigent inmates to receive free copies of OTA statements as well as a challenge to SCCC's practice of providing only one free OTA statement every three months. To the extent the policy or practice may have the potential to harm Katchatag and other indigent prisoners in the future, the claim is not ripe. "The ripeness doctrine requires a plaintiff to claim that either a legal injury has been suffered or that one will be suffered in the future."[26] This doctrine "forbids review of 'abstract disagreements.' "[27] Katchatag's concern is purely hypothetical. As discussed above, Katchatag was not harmed by the Department's policy because he was able to file the administrative appeals that he sought. And the question of whether the Department's policy or SCCC practice might harm him or other

---

[24] *Clark v. State, Dep't of Corr.*, 156 P.3d 384, 387 (Alaska 2007) (quoting *Mun. of Anchorage v. Baxley*, 946 P.2d 894, 899 (Alaska App. 1997)).

[25] Neither party has raised the public interest exception to the mootness doctrine, and regardless, we conclude that it does not apply here. While the issue here is "capable of repetition," there is no concern that the mootness doctrine will "cause review of the issues to be repeatedly circumvented." *Young v. State*, 502 P.3d 964, 970 (Alaska 2022).

[26] *Brause*, 21 P.3d at 359.

[27] *Id.* (quoting *Standard Alaska Prod. Co. v. State, Dep't of Revenue*, 773 P.2d 201, 210 n.14 (Alaska 1989)).

inmates at some point in the future is not ripe for consideration: Katchatag does not allege that he or other inmates will be unable to file future appeals because of the Department's policy, nor does he articulate any hardship that would result from withholding consideration of his arguments until a concrete controversy arises.[28] Thus, Katchatag is not entitled to declaratory relief.[29]

## V. CONCLUSION

The judgment of the superior court is AFFIRMED.

---

[28] *See id.* ("[R]ipeness turns on 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.' " (alteration in original) (quoting 13A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3532, at 112 (2d ed.1984))).

[29] Moreover, granting Katchatag's requested relief would not fulfill the purposes of the Declaratory Judgment Act. *See* AS 22.10.020(g). We have interpreted the Declaratory Judgment Act as providing that "declaratory judgments are rendered to clarify and settle legal relations, and to terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding," and that "[a] court should decline to render declaratory relief when neither of these results can be accomplished." *Forrer v. State, Dep't of Fish & Game, Bd. of Fisheries*, __ P.3d __, Op. No. 7791 at 13, 2025 WL 2884498, at *6 (Alaska Oct. 10, 2025) (quoting *Lowell v. Hayes*, 117 P.3d 745, 755 (Alaska 2005)). Here, the superior court correctly noted that neither of these purposes could be accomplished through a declaratory judgment.